* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * RULINGS ON EVIDENTIARY MATTERS
Following the Deputy Commissioner's hearing, the Deputy Commissioner requested the opinions of Dr. James Hooten on the nature and causes of plaintiff's conditions. Dr. Hooten responded to the inquiry; however, defendants objected that Dr. Hooten's responses to its questions were not sufficient. The Deputy Commissioner reopened the record and re-sent *Page 2 
defendants' questions to Dr. Hooten with a request for more detailed responses. Dr. Hooten responded to the second inquiry regarding defendants' questions. Defendants now argue that the Deputy Commissioner's failure to allow defendants to cross-examine Dr. Hooten by deposition under oath prejudiced defendants and that Dr. Hooten's testimony must be rejected.
For the Commission to require Deputy Commissioners to preside over and participate in every doctor's deposition in cases involving pro se
plaintiffs would be unreasonable and unduly burdensome on the workers' compensation system. The Full Commission believes that the common practice of allowing the Deputy Commissioner and defendants to submit questions to a pro se plaintiff's treating physician is an acceptable and efficient means by which to obtain evidence in cases involving an unrepresented party. See Sparks v. Sailors' Snug Harbor,70 N.C. App. 596, 320 S.E.2d 436 (1984); Nash v. Conrad Industries, Inc.,62 N.C.App. 612, 303 S.E.2d 373, aff'd per curiam, 309 N.C. 629,308 S.E.2d 334 (1983).
Thus, both of Dr. Hooten's responses are HEREBY received into evidence.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. A employee-employer relationship existed between plaintiff and defendant-employer on August 2, 2001 and at all relevant times.
3. Lumbermen's Mutual Casualty Company is the carrier liable on the risk.
4. Plaintiff's average weekly wage is $292.46, yielding a compensation rate of $194.98. *Page 3 
5. The parties submitted into evidence plaintiff's medical records, marked as Stipulated Exhibit 1, without need for further authentication or verification.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 38 years old. Plaintiff is a right-hand-dominant female, born on August 19, 1964. Plaintiff completed the tenth grade.
2. Plaintiff began her employment with defendant-employer on February 14, 2001. Plaintiff's job duties were to pack orders of tobacco products in boxes and cover them with styrofoam peanuts. Plaintiff assembled boxes with a tape gun, verified the number and type of products in the box, filled the box with packing peanuts, and placed the box on a conveyor belt. The boxes were generally packed with cigars, tobacco, or cigarette papers, contained an average of approximately three items and weighed an average of five pounds. Plaintiff worked eight hours per day and worked either five consecutive days with the weekend off or worked four weekdays and Saturday. Plaintiff rarely worked overtime.
3. On June 18, 2001, plaintiff presented to Alamance Regional Medical Center with left hand numbness and tingling up to her elbow. Alamance Regional referred plaintiff to Dr. James Hooten, an orthopaedic specialist.
4. On June 26, 2001, Dr. Hooten diagnosed plaintiff with carpal tunnel syndrome and some bilateral hand tendonitis, with the left being most symptomatic. He prescribed Celebrex and placed plaintiff on light duty, or if none was available, no work for two weeks. *Page 4 
Plaintiff was also instructed to wear a wrist splint. Following this office visit, plaintiff was placed on light duty, where she pulled incorrect or credit orders.
5. At a July 17, 2001 office visit with Dr. Hooten, plaintiff continued to be symptomatic, especially on the left hand. Dr. Hooten injected plaintiff's left wrist. Plaintiff returned to Dr. Hooten on July 18, 2001 for nerve conduction studies, which were consistent with left ulnar nerve entrapment and right median neuropathy.
6. On August 2, 2001, Dr. Hooten performed a carpal tunnel release of plaintiff's left wrist. Following surgery, plaintiff's left hand improved, but the symptoms in her right hand increased. Plaintiff underwent a right carpal tunnel release on September 11, 2001. Plaintiff was instructed not to use her wrist following surgery.
7. As of October 3, 2001, Dr. Hooten gave plaintiff a note that allowed her to return to light duty work beginning October 8, 2001, or if none was available, to remain out of work until October 15, 2001, when she could resume regular work. On October 5, 2001, plaintiff was notified that she was terminated from her employment with defendant-employer effective September 20, 2001.
8. On January 10, 2002, Dr. Hooten felt plaintiff was doing well. Dr. Hooten released plaintiff to return to regular work with no restrictions. Dr. Hooten felt that plaintiff did not show any signs or symptoms that suggested she retained any permanent partial impairment. Dr. Hooten felt it was probable that plaintiff's conditions, including left carpal tunnel syndrome, right carpal tunnel syndrome and left ulnar nerve compression syndrome were at the very least aggravated or accelerated by the activities required by plaintiff's employment. Dr. Hooten opined that plaintiff's work activities with defendant-employer were a significant contributing factor to the development of her left carpal tunnel syndrome, right carpal tunnel syndrome and *Page 5 
left ulnar nerve compression syndrome and that these conditions were most probably associated with the repetitive nature of her work activities. Dr. Hooten also stated that plaintiff's job placed her at an increased risk of developing left carpal tunnel syndrome, right carpal tunnel syndrome and left ulnar nerve compression syndrome than members of the general public not so employed. Dr. Hooten felt that plaintiff reached maximum medical improvement as of January 11, 2002 and that at that time, she did not retain any permanent partial impairment.
9. On May 13, 2002, plaintiff became employed with Sonoco Paper Products earning a wage greater than what she earned when she went out of work on August 2, 2001 for her wrist symptoms.
10. The Full Commission finds that on or about August 2, 2001, plaintiff contracted bilateral carpal tunnel syndrome and left ulnar nerve compression syndrome. Plaintiff's job duties with defendant-employer caused or significantly contributed to the development of her condition and placed plaintiff at an increased risk of developing bilateral carpal tunnel syndrome and left ulnar nerve compression syndrome. The Commission finds that plaintiff's bilateral carpal tunnel syndrome and left ulnar nerve compression syndrome are compensable occupational diseases.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Compensation under the Workers' Compensation Act may be awarded for an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13) if two conditions are met: (1) the disease must be "proven to be due to causes and conditions which are characteristic of and *Page 6 
peculiar to a particular trade, occupation or employment"; and (2) the disease cannot be an "ordinary disease of life to which the general public is equally exposed outside of the employment." Booker v. MedicalCenter, 297 N.C. 458, 468; 256 S.E. 2d 189, 196 (1979). The claimant bears the burden of proving the existence of an occupational disease.Gay v. J.P. Stevens Co., 79 N.C. App. 324, 331, 339 S.E. 2d 490, 494
(1986).
2. In this case, plaintiff's employment with defendant-employer caused or significantly contributed to the development of her bilateral carpal tunnel syndrome and left ulnar nerve compression syndrome and placed her at an increased risk for developing these conditions. Plaintiff's bilateral carpal tunnel syndrome and left ulnar nerve compression syndrome were not ordinary diseases of life to which the general public is equally exposed and, therefore, plaintiff contracted compensable occupational diseases. N.C. Gen. Stat. § 97-53(13); Booker v. MedicalCenter, supra.
3. As a direct and proximate result of plaintiff's compensable occupational diseases of bilateral carpal tunnel syndrome and left ulnar nerve compression syndrome, plaintiff was unable to earn any wages from August 2, 2001 through May 12, 2002. Thus, plaintiff is entitled to temporary total disability compensation at the rate of $194.98 per week from August 2, 2001 until May 12, 2002. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants provide such medical care and treatment as is reasonably required to provide relief, effect a cure or lessen plaintiff's period of disability caused by plaintiff's compensable occupational diseases, including but not limited to, plaintiff's treatment at Alamance Regional Medical Center and plaintiff's treatment by Dr. Hooten. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * * *Page 7 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney fee approved below, defendants shall pay to plaintiff temporary total disability compensation in the amount of $194.98 per week from August 2, 2001 until May 12, 2002. This amount has accrued and shall be paid in a lump sum.
2. Defendants shall provide to plaintiff all medical treatment related to her compensable occupational diseases to the extent the same is reasonably designed to effect a cure, provide relief or lessen plaintiff's period of disability, including but not limited to, treatment of plaintiff by Alamance Regional Medical Center and by Dr. Hooten.
3. Defendants shall pay the cost of this action, including an expert witness fee to Dr. Hooten in the amount of $300.00, if not already paid.
This 26th day of March 2007.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/__________________ DANNY LEE MCDONALD COMMISSIONER
 S/__________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1